GRIFFIS, P. J.,
for the Court:
¶ 1. This appeal considers whether an arbitration provision in a contract for the transfer of structured settlement payment rights requires the arbitration of this dispute. The appellants argue that the parties’ agreement required that the dispute be resolved in arbitration and that the arbitrator decide the question of arbitrability of the dispute. The chancellor determined that the agreement, which contained the arbitration provision, was not effective under the Mississippi Structured Settlement Protection Act (“MSSPA”), Mississippi Code Annotated sections 11-57-1 through 11-57-1-15 (Rev.2012). We find no error and affirm.
FACTS
¶2. Because the dates of the various agreements, pleadings and orders are relevant to our consideration, we provide a detailed chronology.

A. The Structured, Settlement Agreement

¶ 8. Benny Saucier settled a personal-injury lawsuit. As part of the settlement, Saucier entered a contract for the future payment of an annuity[1] with Aviva Life and Annuity Company (“Aviva”).[2]
¶ 4. Under the structured settlement agreement, Saucier was entitled to receive[3] two installments[4]: (1) on August 30, 2010, Saucier was to be paid $150,000; and (2) on August 30, 2015, Saucier was due to be paid $200,000. These two payments, totaling $350,000, are disputed in this action and are referred to as the “Assigned Payments.”
B. The Original Transfer of the Assigned Payments to Woodbridge
¶5. Saucier decided to sell[5] the Assigned Payments to Woodbridge Investments LLC (“Woodbridge”).[6] Because Saucier was a resident of Harrison County, Mississippi, the chancery court of Har *1111 rison County must have approved the transfer of Saucier’s structured settlement payment rights. See Miss.Code Ann. § 11-57-7 (Rev.2012). Saucier was to receive $220,000 in consideration for the Assigned Payments.
¶ 6. On October 14, 2008, Woodbridge filed[7] a “Petition for Approval of Transfer of Structured Settlement Payment Rights by and between Woodbridge Investments, LLC, Transferee, and Benny Ray Saucier, Transferor, Pursuant to Mississippi Code §§ 11-57-1, et seq.” In the petition, Wood-bridge represented that all of the requirements of the MSSPA had been met and asked the court to enter an order approving the transfer agreement. Attached to the petition were: (a) a declaration signed by Saucier, (b) the structured settlement annuity sale and assignment agreement that was signed by Saucier and Wood-bridge, (c) the disclosure statement, and (d) a list of Saucier’s dependents. On November 21, 2008, Woodbridge served notice, by priority mail, on all interested parties — Saucier, Aviva, and OneBeacon.
¶ 7. A hearing on the petition was held on December 12, 2008. Woodbridge’s counsel presented the petition, and Saucier testified. A transcript is included in the record. The chancellor then signed an “Order Approving the Transfer of Structured Settlement Payment Rights” (the “Transfer Order”). The Transfer Order stated that the chancellor had considered the terms of proposed transfer and had determined that the transfer met the requirements of the MSSPA. The chancellor approved the transfer and authorized Aviva and OneBeacon to pay the Assigned Payments to Woodbridge’s designated as-signee, the Bank of Internet (“BOI”). The Transfer Order also referred to the “purchase agreement” and stated that Wood-bridge had provided Saucier a “transfer disclosure statement in compliance with the [MSSPA].” The order did not state the amount of consideration Wood-bridge/BOI was to pay Saucier, but the amount of $220,000 was included in the disclosure, which was attached to the petition. According to the agreement, the consideration[8] or payment was to be made to Saucier on the fifth business day after certain conditions precedent had been met.
¶ 8. Neither Woodbridge nór BOI paid Saucier the consideration approved in the Transfer Order. Instead, Woodbridge referred Saucier to RSL Funding LLC and RSL-5B-IL Ltd. (collectively, “RSL”).

C. The Transfer of the Assigned Payments to RSL

¶ 9. Just over a month later, on January 27, 2009, Saucier and RSL signed an “Amended Transfer Agreement (For Transfer of • Structured Settlement Payments).” Saucier agreed to sell the Assigned Payments to RSL in exchange for the payment of $212,000. The Amended Transfer Agreement included a handwritten deadline of February 6, 2009. It also obligated Saucier to transfer the Assigned Payments free and clear of any liens.[9]
*1112 ¶ 10. The Amended Transfer Agreement included an arbitration clause, which reads:
[Disputes under this Agreement of any nature whatsoever including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligation, the satisfaction of any rights, and/or the enforceability hereof, including any claims that the Assignor has breached this agreement, shall be resolved through demand by any interested party to arbitrate the dispute under the laws of the State of Mississippi.
¶ 11. Saucier also signed, on January 27, an “Application” that contained an arbitration clause. Two days later, on January 29, RSL agreed to advance Saucier $6,500 in exchange for the execution of a promissory note. Saucier cashed RSL’s check on.or about February 3, 2009. The check included a handwritten note from Stewart A. Feldman, RSL’s chief executive officer, that reads, “Thank you for giving us sufficient time for the judge to rule which may be 1-2 ± weeks.” The promissory note included an arbitration clause:
Any dispute or disagreement arising under this Note or any of the other Loan Documents or any transfer agreement, of any nature whatsoever including but not limited to those disputes or disagreements sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability of any agreement, shall be resolved through demand by any party and/or interested party to arbitrate the dispute in Texas in and under the laws of the state of Texas.
These arbitration provisions also stated that the issue of arbitrability would be resolved by the arbitrator.
¶ 12. On February 3, 2009, RSL filed a “Motion for Entry of Amended Order of Transfer.” The motion was dated January 30, 2009, and it included a certificate of service that indicated the motion was served, by first class mail, on Saucier, Woodbridge, Aviva, and OneBeacon. In a separate pleading, RSL filed and served, on the same dates, a notice of hearing that set the motion for hearing on March 5, 2009, at the Harrison County Chancery Court, in Biloxi, Mississippi.
¶ 13. The introductory paragraph of the motion states, “Because of the ongoing national financial crisis, Woodbridge has found it necessary to assign its rights, title and interests in the subject payments and its contract with Payee ... to RSL Funding, LLC, which in turn requests that the Court enter an Amended Order of Transfer.” The motion indicated that it was a transfer from Woodbridge to RSL, and attached was a copy of the “Assignment” from Woodbridge to RSL.
¶ 14. Another document, titled “Assignment,” was attached to the motion. This Assignment was signed by BOI. It did not “assign” BOI’s rights to RSL. Rather, it stated that BOI “irrevocably waives any and all rights, title and interest in and to or related to [in] any way the contemplated and/or pending transaction between Benny Ray Saucier and RSL .... ” (Emphasis added).
¶ 15. The motion also included: (a) an exhibit titled “Market Conditions Affecting Structured Settlements,” which included eleven pages of internet articles on the current conditions of the financial industry, (b) a disclosure statement signed by Saucier, (c) the Amended Transfer Agreement signed by Saucier and RSL, (d) a letter from Aviva to Saucier dated September 26, 2008, and (e) a statement where Saucier waived his right to independent professional advice.
*1113 ¶ 16. On February 6, 2008, RSL’s counsel appeared ex parte before the chancellor and presented the motion to the chancellor. Saucier was not present at this hearing, and there is no transcript of this hearing in the record. The chancellor signed an “Order Granting Motion for Entry of Amended Order of Transfer” (“Amended Order I”).
¶ 17. In this order, the chancellor found that the motion was presented pursuant to the MSSPA; the court had jurisdiction; the transfer of the Assigned Payments was set forth in a transfer agreement and disclosure statement; and the transfer complied with MSSPA and was in the best interest of Saucier. In the order, the chancellor authorized the transfer of the Assigned Payments to RSL. The order was prepared and signed by RSL’s counsel.
¶ 18. The March 5, 2009 hearing, which was set in the notice of hearing, was not held.
¶ 19. On March 12, 2009, RSL’s counsel again appeared ex parte before the chancellor and presented a second order. RSL did not file an amended petition or serve the interested parties notice of this hearing. The record on appeal does not include a transcript of this hearing.
¶ 20. Nevertheless, on March 12, 2009, the chancellor signed an “Amended Order Approving of Transfer of Structured Payment Rights” (“Amended Order II”). In this order, the chancellor removed BOI as the recipient of the annuity payments and designated RSL as the sole assignee. The order also vacated and replaced the Transfer Order. Attached to the order was a nine-page “Stipulation”, which was signed by Saucier and representatives of RSL, Woodbridge, BOI, OneBeacon, and Aviva. The Stipulation provided, among other matters, that the Assigned Payments would be transferred from Saucier to RSL.
The Stipulation expressly provided that it would be governed by the law of the Commonwealth of Massachusetts. The Stipulation did not contain an arbitration provision.
¶ 21. During the ex parte appearances, RSL’s counsel told the chancellor that Saucier was aware of the hearing and voluntarily waived his appearance. Yet there was no waiver of service of process or joinder in the petition filed in the court file.

D. Saucier’s Challenge of the Transfer

¶ 22. In the months that followed, Saucier did not receive the payment contemplated in the Transfer Order, Amended Order I, or Amended Order II.
¶ 23. On June 11, 2009, Saucier filed a “Motion to Dissolve or Set Aside Order Granting Motion for Entry of Amended Order of Transfer” (the “Motion to Dissolve”). Saucier argued that Amended Order I did not comply with the MSSPA and that the Amended Transfer Agreement expired when it was not funded by the February 6, 2009 deadline. The court set the motion for hearing on August 6, 2009.
¶ 24. On August 3, 2009, RSL filed its “Motion to Stay, or in the Alternative, Response in Opposition to Motion to Dissolve or Set Aside Amended Order of Transfer.” RSL argued that it was entitled to clear title to the Assigned Payments and that RSL had delayed its required payment because of Saucier’s attempts to evade taxes. RSL claimed that the state and federal government had levied tax liens against the funds, and RSL had paid $15,653.13 to satisfy Saucier’s state tax liens.
¶ 25. At the August 6 hearing, counsel for Saucier and RSL argued: No testimony was presented. On September 8, 2009, the chancellor entered an order on the *1114 motion to dissolve. The chancellor found that: (1) RSL “failed to comply with all of the provisions of the [MSSPA],” and (2) RSL “did not give notice of the hearing to [Saucier] due to an alleged waiver ... [, and] notice cannot be waived pursuant to the [MSSPA].” The chancellor ordered “this matter to be set for a hearing on damages and all evidentiary matters.”
¶ 26. On September 18, 2009, RSL filed a motion to reconsider. RSL argued that “the Assignment by Woodbridge to RSL is not a transfer covered by the [MSSPA] because the [MSSPA] covered transfer occurred on December 12, 2008.” RSL claimed that the Transfer Order complied with the MSSPA, and as of December 12, 2008, the day the Transfer Order was entered, Saucier did not have any rights to the Assigned Payments. RSL also argued that its duty to pay Saucier was subject to the condition precedent that RSL, as the purchaser, had the right to clear the title to the payments.
¶ 27. Further, RSL argued it had no duty to perform because tax liens had been levied on the Assigned Payments. Thus, RSL claimed that it had only been able to partially clear the title because Saucier refused to provide any information about the state and federal tax liens. Finally, RSL contended Saucier was unjustly enriched because RSL paid off the state tax lien and advanced Saucier $6,500.
¶ 28. The chancellor held a hearing on the motion to reconsider on November 19, 2009. Counsel argued the motion, and no testimony was presented.
¶ 29. On January 15, 2010, the chancellor entered an order denying the motion to reconsider. The chancellor again found that RSL could not argue the MSSPA did not apply, because RSL’s pleadings asserted that all agreements and transactions adhered to the MSSPA’s requirements. In addition, the chancellor found that, in RSL’s motion, which resulted in Amended Order I, RSL stated that it had filed the motion pursuant to the MSSPA. RSL had also claimed venue was proper under the MSSPA and that the “Amended Disclosure Statement Transfer Agreement” met the MSSPA’s requirements.

E. RSL’s Efforts to Arbitrate and Saucier’s Challenge

¶ 30. In March 2010, RSL filed a demand for arbitration. RSL sought to resolve the dispute about damages that related to RSL’s breach-of-contract claim against Saucier. RSL also filed an inter-pleader action in federal court to determine the amount of the federal tax lien.
¶ 31. Saucier responded with a “Motion for Ex Parte Relief,” which was filed March 15, 2010. Saucier asked the court to grant a restraining order and direct RSL to stop pursuing the Texas arbitration proceedings and the federal court in-terpleader action. The chancellor issued an “Ex Parte Order” that granted the relief requested by Saucier. The chancellor prohibited “RSL from pursuing the arbitration proceeding it filed in Texas” and “the interpleader action” in federal court. The order also required Saucier to post a bond and stated that the order “will expire on March 25, 2010, subject to further order of the court.”
¶ 32. The chancellor held another hearing on May 7, 2010. The issue was whether Saucier was aware of RSL’s action on and after February 6, 2009. Saucier testified at that hearing that when RSL approached the court for an order on February 6, 2009, he was unaware of RSL’s actions. However, Saucier admitted that he had signed a sample order. But, Saucier testified that he did not know about the March 12 hearing. Saucier also admitted that he signed the Stipulation, which was *1115 presented to the court on March 12 and attached to Amended Order II.
¶ 38. Stewart Feldman, RSL’s chief executive officer, testified that the Stipulation was prepared by Aviva’s attorneys in late February or the beginning of March. Feldman testified that his notes indicated that Saucier faxed the signed Stipulation back on March 4, 2009. Feldman also testified that the only time after February 6, 2009 Saucier told him he did not want to go through with the transaction was in late March or early April. Feldman said that Saucier told him he would go through with the transaction if RSL would give him another $20,000.
¶ 34. On May 17, 2010, Saucier filed a supplemental brief that asked for a permanent injunction. Saucier argued that Amended Order II was vacated and replaced the Transfer Order. He also argued that the fact that Amended Order II was later set aside did not mean the Transfer Order was revived. Thus, the December 12th Transfer Order was void and further steps could not be taken to enforce the vacated judgment.
¶ 35. On May 20, 2010, RSL filed a “Brief in Support of [I]ts Request that Benny Ray Saucier’s Motion for Ex Parte Relief [B]e Denied.” RSL argued that a valid transfer order existed. RSL claimed that even if Amended Order II was set aside, the original Transfer Order was resurrected. If it was not set aside, RSL claimed that there was still a valid transfer because Amended Order II approved the transfer from Saucier to RSL. RSL’s point was that, because there was a valid transfer order, the arbitration provisions were valid as well. RSL also claimed that Saucier was aware of its actions on and after February 6, 2009, and cited the evidence gathered during the May 7, 2010 hearing to support that conclusion.
¶ 36. On June 22, 2010, the chancellor entered an order that denied RSL’s motion to set aside the ex parte order, and he extended the arbitration injunction. The chancellor found that when the court set aside the orders that approved the transfer, the agreement between Saucier and RSL became unenforceable, and the arbitration provisions became void. The chancellor further found that when the court overturned Amended Order II, and RSL did not appeal, the only issue left to resolve was the award of damages. The chancellor held that the Transfer Order was no longer in force as of March 12, 2009.
¶ 37. On July 21, 2010, RSL filed a notice of appeal with the Mississippi Supreme Court. RSL argued that it appealed the June 22, 2010 order and challenged the chancellor’s decision to vacate the Transfer Order and Amended Order II. The Clerk of the Supreme Court assigned docket no. 2010-CA-00122 to the appeal. By order dated November 18, 2010, the supreme court dismissed the appeal as interlocutory. Despite this dismissal, the supreme court docket indicates that the case has remained pending, because there are several orders signed by supreme court justices that grant extensions for briefing.

F. Saucier’s Motion for Declaratory Judgment

¶ 38. On November 23, 2010, Saucier filed a motion for a declaratory judgment. Saucier asked the chancellor to declare that the transfer was not valid, a transfer would not be in Saucier’s best interest; and Saucier was the exclusive owner of the annuity contract. Saucier also asked the chancellor to determine what damages, if any, he owed RSL and to rule that Saucier owed no duties to RSL under transfer agreement, Mississippi law, or federal law. *1116 Saucier also asked the chancellor to declare that RSL was liable to Saucier for costs, attorney’s fees, and interest payments because it had failed to comply with the MSSPA and had engaged in litigation abuse under Rule 11 of the Mississippi Rules of Civil Procedure.
¶ 39. On February 2, 2011, Saucier filed a motion for summary judgment on his declaratory — judgment action.
¶40. On March 4, 2011, RSL filed its response in opposition to Saucier’s motion for summary judgment and moved to stay the state court proceedings and refer the case to arbitration. RSL argued that Saucier was given notice and a valid transfer existed. RSL also claimed that it was entitled to the Assigned Payments and that the transfer was in Saucier’s best interest. RSL claimed that Saucier was liable to RSL for damages and that the issue of damages should be resolved by the arbitrator. Finally, RSL argued that its demand for arbitration was not frivolous and, as such, it did not owe Saucier damages.
¶ 41. On April 7, 2011, RSL filed a “Motion to Stay State Court Proceedings and Refer the Proceeding to Arbitration.” In this motion, RSL claimed that the transfer agreement and the Federal Arbitration Act required that the dispute be resolved in arbitration. RSL stated that the separability doctrine mandated arbitration even if the transfer agreement was found to be voidable or void. According to RSL, it is the arbitrator and not a Mississippi court who must decide whether or not a contract that contains an arbitration clause is illegal. RSL also argued that if it proceeded in state court, it would waive its right to arbitration.
¶ 42. On June 17, 2011, the chancellor ruled:
1.This Court has previously found that RSL violated the provisions of the Mississippi Structured Settlement Protection Act when it failed to provide Saucier with statutorily required notice of the hearings on February 6, 2009, and March 12, 2009, to approve transfer of the structured settlement to RSL.
2. This Court has previously held that there is no valid order from this Court approving transfer of the future payments Saucier would otherwise receive from Aviva to RSL in exchange for specified payment(s) to Saucier.
3. This Court has previously held that RSL is entitled to damages as a result of the expenses it incurred and/or paid to or on behalf of Saucier.
4. The Court finds that the actions of RSL in this forum have not been established as a matter of fact to be of such a nature as would allow under [Rule] 11 the payment of attorneys fees and costs. The Court finds that there is a substantial issue of material fact on this opinion.
5. When the Court vacated the original order (from December, 2008) approving the transfer of the structured settlement, the factual underpinnings upon which the original order of December 2008 was predicated no longer existed. That Order approved the transfer as between Saucier and Woodbridge. In its “Stipulation” (see Exhibit B in RSL’s Response to the Motion for Summary Judgment) RSL refers to its agreement with Saucier as a Transfer Agreement^] which by definition would require appropriate notice to Saucier, which this Court has already found was not given prior to obtaining the February 6, 2009[ ] Order.
*1117 6. The efforts of RSL to enforce its arbitration clause in this matter violate state law [because they were], as stated by the United States Court of Appeals for the Fifth Circuit, “a device to bring about an otherwise unlawful transfer.” See Symetra Life Ins. v. Rapid Settlements, Ltd., [567] F.3d 754 (5th Cir.2009).
7. This Court finds that the Motion of RSL to Stay Court Proceedings and Refer Proceeding to Arbitration should be and is hereby DENIED.
8. This Court further finds that the Motion for Permanent Injunction Prohibiting Arbitration should be and is hereby GRANTED.
9. This Court further finds that the Motion for Summary Judgment filed by Saucier should be DENIED as regards any finding of entitlement of Saucier to Rule 11 sanctions.
¶ 43. On July 8, 2011, RSL filed its notice of appeal. On July 19, 2011, the chancellor entered a corrected order, and it provided that it was nunc pro tunc to June 17, 2011.[10] The Clerk of the Supreme Court assigned docket no. 2011-CA-01036 to this appeal.
ANALYSIS

I. Whether this Court has appellate jurisdiction over this issue.

¶ 44. This Court must first consider whether it has jurisdiction to consider this appeal. We recognize that the chancellor has yet to enter a final judgment. The June 17, 2011 order was not a final order. Paragraph 3 specifically states that RSL is entitled to an award of damages. In addition, paragraphs 4 and 9 indicate that the issue of Rule 11 sanctions has not been determined; instead, the chancellor only decided that summary judgment was not proper.
¶ 45. We also note that the June 17, 2010 order does not contain a Mississippi Rule of Civil Procedure 54(b) certification, which is required for an appeal of a judgment as to “fewer than all of the claims and parties.” Despite the failure to include a Rule 54(b) certification in the June 17, 2011 order, we acknowledge that the supreme court has twice by order denied a request to remand these cases to the chancellor for a Rule 54(b) certification or to strike interlocutory references in the June 17 order.
¶ 46. We have jurisdiction to consider this appeal because the Mississippi Supreme Court has held that “any final decision with respect to arbitration is appeal-able to this Court pursuant to Mississippi Rules of Appellate Procedure 3 and 4.” Sawyers v. Herrin-Gear Chevrolet Co., 26 So.3d 1026, 1034 (¶ 19) (Miss.2010). This appeal is limited to a review of whether the chancellor erred in the June 17, 2011 order when he denied RSL’s motion to compel arbitration and issued a permanent injunction against further efforts to arbitrate. We do not address the issue of damages or attorney’s fees allowed under Rule 11 of the Mississippi Rules of Civil Procedure; such claims are remanded to the Chancery Court of Harrison County for further proceedings consistent with this opinion.

II. Whether Saucier and RSL must arbitrate their dispute.

¶ 47. The review of the grant or denial of a motion to compel arbitration is de novo. East Ford, Inc. v. Taylor, 826 *1118 So.2d 709, 713 (¶9) (Miss.2002). We are not required to show deference to the chancery court. IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 104 (Miss.1998).
¶ 48. The Mississippi Supreme Court has adopted the definitive federal policy that calls for rigorously enforcing arbitration agreements. East Ford, 826 So.2d at 713 (¶ 11) (Miss.2002). As a matter of public policy, Mississippi courts have long upheld and enforced agreements to arbitrate. IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 103-04 (¶ 28) (Miss.1998).
¶49. The question we must decide is whether there was a valid and enforceable agreement to arbitrate between Saucier and RSL. “The first prong is two-fold in that the court considers whether there is a valid arbitration agreement and then whether the parties’ dispute is within the scope of the arbitration agreement.” Greater Canton Ford Mercury, Inc. v. Ables, 948 So.2d 417, 421 (¶ 9) (Miss.2007) (citation omitted). The answer to this question decides the issue.
¶ 50. RSL makes two separate arguments. Both fail. First, RSL claims that the MSSPA does not govern this transaction because it was a “reassignment.” Second, RSL claims that it obtained approval of the chancery court in Amended Orders I and II.

A. Whether the transfer to RSL was a “reassignment.”

¶ 51. RSL argues that the MSSPA does not apply here because it was a “reassignment.” Thus, RSL was merely substituted as Woodbridge’s or BOI’s assignee.
¶ 52. RSL agrees that the MSSPA governs an original transfer of structured settlement payment rights by the payee (Saucier) and requires court approval after notice to all interested parties. Thus, RSL agrees that the original Transfer Order was required. See Miss.Code Ann. § 11-57-7.
¶ 53. RSL argues that the Transfer Order authorized Saucier’s transfer of the Assigned Payments to Woodbridge/BOI. We agree. RSL then claims that it stepped in, or was substituted, to take BOI’s place as Woodbridge’s “designated assignee.” RSL concludes that the Transfer Order authorized a “reassignment” of Woodbridge’s rights.
¶ 54. So the first question for this Court to decide is whether the “assignment” to RSL was an original assignment or a reassignment.
¶ 55. We begin with the Transfer Order between Saucier and Woodbridge/BOI. In the original agreement, authorized by the chancellor in the Transfer Order, there was no arbitration provision to enforce. As a result, RSL may not claim that a right to arbitrate the dispute arose from the “reassignment” of Woodbridge/BOI’s rights under the Transfer Order.
¶ 56. Next, we recognize that a reassignment of Woodbridge/BOI’s rights under the Transfer Order would not require Saucier’s consent or approval. The only interested parties to a reassignment of the Transfer Order would be Woodbridge, BOI, RSL, Aviva, and OneBeacon. If it were a reassignment, the original transfer would have removed Saucier as the payee, and he would have had no further interest in the Assigned Payments.
¶ 57. Such was not the case here. The Transfer Order obligated Woodbridge/BOI to pay $220,000 to Saucier. Wood-bridge/BOI did not make the payment. If it were only a reassignment, the consideration for the reassignment would require a payment from RSL to Woodbridge/BOI. The fact that RSL replaced BOI, before the original transfer agreement had been *1119 funded, indicates that the original transfer had not been completed.
¶ 58. Finally, the doctrine of judicial estoppel applies here. “Judicial estop-pel is a doctrine of law applied by a trial court to a situation where a party asserts one position in a prior action or pleading but then seeks to take a contrary position to the detriment of the party opposite.” Miss. Power & Light Co. v. Cook, 882 So.2d 474, 482 (¶ 22) (Miss.2002) (citations omitted).
¶ 59. In its first pleading filed with the chancery court, RSL invoked jurisdiction and venue under the MSSPA, citing Mississippi Code Annotated Section 11-57-ll(l)(Rev.2012). RSL also claimed that it “timely provided to Payee an Amended Disclosure Statement, in compliance with Section 11-57-5,” and the “Payee executed an amended transfer agreement for transfer of the Assigned Payments to RSL Funding, which constitutes a Transfer Agreement as that term is defined under the [MSSPA].” More importantly, RSL’s motion stated:
RSL Funding requests that the Court find that, except for this Court’s Order dated December 12, 2008, none of the Annuity Owner, Annuity Issuer, Wood-bridge, RSL Funding ... and Payee have sold, assigned, [orjconveyed ... these Assigned Payments and that Payee has all right, title and interest in the Assigned Payments with full authority to make this transfer to RSL Funding.
(Emphasis added). RSL concludes with the request that the chancellor grant “the Amended Application and approv[e] the terms of the amended Transfer Agreement and the Assignment and/or Transfer of Payee’s Assigned Payment to RSL Funding, LLC....”
¶ 60. Having once asked the court to conclude that this transaction must be approved under the MSSPA, RSL is judicially estopped from claiming that the transaction does not need to be approved under the MSSPA. RSL’s motion clearly indicated that RSL sought approval of an original transfer, which involved Saucier as the payee, and the transaction was not a reassignment among funding companies.
¶ 61. For these reasons, we reject RSL’s claim that this was a reassignment and, as such, was not governed by the MSSPA.

B. Whether the transfer was approved by the chancellor.

¶ 62. We move to the questions of whether RSL complied with the MSSPA and the arbitration provisions were effective.
¶ 68. RSL seeks to enforce arbitration provisions that were contained in (a) the January 27, 2009 Amended Transfer Agreement, (b) the January 27, 2009 Application, and (c) the January 29, 2009 promissory note. RSL submitted the Amended Transfer Agreement and the Application to the chancellor when the chancellor approved Amended Order I, on February 6, 2009, and Amended Order II, on March 12, 2009. Both orders amended the Transfer Order to delete BOI as the recipient of the annuity payments and name RSL as the sole “assignee” for payment. Both orders also approved the terms of the transfer, which were contained in the Amended Transfer Agreement.
¶ 64. On January 30, 2009, RSL served the Motion for Entry of Amended Order of Transfer and a notice of hearing on Saucier and other interest parties. The notice of hearing was served by mail and set a hearing on the motion for March 5, 2009, at 9:30 a.m. No hearing was held on March 5. Instead, RSL’s counsel appeared ex parte before the chancellor on February 6 and March 12, 2009 and presented orders. The chancellor was told that Saucier was *1120 aware of the hearing and voluntarily waived his appearance. Yet no waiver of process or joinder was filed with the clerk.
¶65. RSL claims that these amended orders were required by Aviva’s desire that its records reflect the correct payment recipient — RSL, not Woodbridge or BOI. Thus, RSL claims that, at Aviva’s insistence, Amended Order II, which named RSL as the assignee, further “vacated and replaced” the Transfer Order “approving the transfer” to Woodbridge “and ultimately to” BOI. Aviva then notified Saucier that RSL would now receive payment, a change to which Saucier objected.
¶ 66. Saucier’s Motion to Dissolve attacked the validity of these orders. Saucier cited noncompliance with the MSSPA and fraud. Also, Saucier alleged that the original transfer agreement expired when the funding did not occur. RSL countered with an argument that it was entitled to receive clear title to the Assigned Payments and was entitled to additional time to fund the agreement in trying to work out the state and federal tax liens levied against Saucier.
¶ 67. The chancellor determined that RSL had failed to follow the MSSPA. The MSSPA specifically requires notice be given. Mississippi Code Annotated Section 11-57-11(2) (Rev.2012), in relevant part, provides:
Not less than twenty (20) days prior to the scheduled hearing on any application for approval of a transfer of structured settlement payment rights under Section 11-57-7, the transferee shall file with the court ... and serve on all interested parties a notice of the proposed transfer and the application for its authorization, including with such notice:
(a)A copy of the transferee’s application;
(b) A copy of the transfer agreement;
(c) A copy of the disclosure statement required under Section 11-57-5;
[[Image here]]
(e) Notification that any interested pariy is entitled to support, oppose or otherwise respond to the transferee’s application, either in person or by counsel, by submitting written comments to the court ... or by participating in the hearing; and
(f) Notification of the time and place of the hearing and notification of the manner in which and the time by which written responses to the application must be filed which shall be not less than fifteen (15) days after service of the transferee’s notice in order to be considered by the court or responsible administrative authority.
(Emphasis added). The MSSPA does not provide for a waiver of notice. All interested parties are required to be notified of certain matters, including the time and place of the hearing. Id.
¶ 68. The MSSPA does not specify the appropriate notice that is required section 11-57-11(2). Because the MSSPA requires court approval, “[a] civil action is commenced by filing a complaint with the court.” M.R.C.P. 3(a). To obtain personal jurisdiction over an interested party, service of process is required consistent with either Rule 4 or Rule 81 of the Mississippi Rules of Civil Procedure. Although the MSSPA is not included among the actions subject to Rule 81(a), reading section 11-5-11(2), we interpret notice to require a return for a date certain similar to the procedure authorized in Rule 81(d)(5). At a minimum, once the original notice is provided to an interested party, notice of subsequent proceedings must comply with Mississippi Rule of Civil Procedure 5.
¶ 69. The fact that RSL served, on January 30, 2009, a notice of hearing that *1121 set RSL’s Motion for Entry of Amended Order of Transfer to be heard on March 5, 2009 at 9:30 a.m., and then did not have the scheduled hearing, evidences a lack of notice. Further, RSL’s ex parte appearance before the chancellor on February 6 and March 12, 2009, also evidences that RSL failed to comply with the MSSPA.
¶ 70. We agree with the chancellor that RSL’s failure to provide Saucier with notice, as required under section 11-57-11(2), requires that Amended Order I and Amended Order II be vacated and set aside. Because any assignment by Saucier of his rights to receive structured settlement payments must be approved by the court to be effective, we find that RSL failed to comply with the MSSPA, and the Amended Transfer Agreement was not “effective.” Miss. Code Ann. § 11-57-7. Hence, there was no arbitration provision to be enforced.
¶ 71. The United States Court of Appeals for the Fifth Circuit has addressed whether arbitration may be used to collect damages if there is no valid transfer order. Symetra Life Ins. Co. v. Rapid Settlements, Ltd., 567 F.3d 754, 754 (5th Cir.
[u]sing arbitration to effect a transfer of all or part of an annuitant’s future payments, when a state court has either refused to approve such a transfer under the applicable state structured settlement protection act or such approval has not been pursued or obtained, is contrary to the laws of 43 states.
Symetra Life Ins. Co. v. Rapid Settlements, Ltd., 599 F.Supp.2d 809, 838 (S.D.Tex.2008).
¶ 72. Accordingly, we affirm the chancellor’s order that denied RSL’s Motion to Stay Court Proceedings and Refer the Proceeding to Arbitration.
¶ 73. Further, because we have found that the Amended Transfer Agreement was not “effective,” this Court need not address whether the chancellor or the arbitrator should decide the question of arbi-trability.
¶ 74. Finally, we find no merit to RSL’s argument that the chancellor improperly granted a permanent injunction because Saucier never requested a permanent injunction. On May 14, 2010, Saucier filed a supplemental pleading that requested a permanent injunction.
¶ 75. Having fully and finally decided all issues regarding arbitration, we remand this case to the chancery court for further proceedings consistent with this opinion.
¶ 76. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE OPINION.

. A “[structured settlement” is defined as "an arrangement for periodic payment of damages for personal injuries or sickness established by setdement or judgment in resolution of a tort claim_” Miss.Code Ann. § ll-57-3(m)(Rev.2012). The "'[structured settlement agreement’ means the agreement, judgment, stipulation or release embodying the terms of a structured settlement.” Miss. Code Ann. § 1 l-57-3(n) (Rev.2012).

. Aviva was the "[ajnnuity issuer,” which is defined as "an insurer that has issued a contract to fund periodic payments under a structured setdement. Miss.Code Ann. § 11 — 57— 3(a) (Rev.2012). OneBeacon America Insurance Company ("OneBeacon”) was the "[s]tructured settlement obligor,” which is defined as “the party that has the continuing obligation to make periodic payments to the payee under a structured settlement agreement or a qualified assignment agreement." Miss.Code Ann. § ll-57-3(o)(Rev.2012). Avi-va and OneBeacon are not parties to this litigation.

. Saucier was the "[pjayee,” which is defined as "an individual who is receiving tax-free payments under a structured settlement and proposes to make a transfer of payment rights thereunder." Miss.Code Ann. § 11-57-3(h)(Rev.2012).

. These payments were "[sjtructured settlement payment rights,” which are defined as "rights to receive periodic payments under a structured settlement, whether from the structured settlement obligor or the annuity issuer ” Miss.Code Ann. § 11-57-3(p)(Rev.2012).

. A “[tjransfer” is defined as "any sale [or] assignment ... of structured settlement payment rights made by a payee for consideration....” Miss.Code Ann. § 11 — 57— 3(r)(Rev.2012).

. Woodbridge is the "[transferee,” which is defined as “a party acquiring or proposing to acquire structured settlement payment rights through a transfer.” Miss.Code Ann. § 11-57-3(u)(Rev.2012).

. This litigation was filed in the Chancery Court of Harrison County, Mississippi. The clerk assigned this litigation cause no. C2401-08-02649(4). All pleadings filed with the chancery clerk were filed in this case file. There are two separate appellate case numbers because there were two notices of appeal filed at different times.

. The consideration to be paid is defined under the MSSPA as the " ‘[n]et advance amount!,]' [which] means the gross advance amount less the aggregate amount of the actual and estimated transfer expenses required to be disclosed under Section 1 l-57-[5](e).” Miss.Code Ann. § ll-57-3(g) (Rev.2012).

.As of February 6, 2009, Saucier admitted tax liens existed but believed the liens were expired.

. There is no issue in this appeal as to the validity or effect of the corrected order. The language used in the corrected order is almost identical to that in the June 17, 2010 order.